■ HEMPSTEAD THEATRE CORPORATION et al., Respondents, v. METROPOLITAN PLAYHOUSES, INC., et al., Appellants.

VALENTE, J. (dissenting). I dissent and would reverse the judgment and grant a new trial. Where I part company with the majority and the Trial Justice is in the determination of the quantum of the damages. For even if the candy stands are to be regarded as self-operated by Skouras, I believe that in the computation of the additional percentage rent on such candy sales the leases clearly call for no more than the inclusion of income thereof rather than gross receipts. The trial court, whose decision is now supported by this court, computed the additional percentage rent for the years in suit on the basis of the total gross receipts of the candy sales at plaintiffs' theatres without deduction of the cost of the candy.

The leases called for a minimum fixed rent and percentages of the gross receipts derived from the premises. In the agreements "Gross Receipts" was defined as including "all income and revenue arising from the operation of each of the demised premises, less gross receipts taxes as may be levied * * * and without limiting the generality of the foregoing shall include * * * all income derived from concessions and advertising".

The trial court's narrow construction of the phrase "income derived from concessions", limiting its application to independent concessionaires is unfair and does not comport with the obvious intent of the parties as expressed in their agreements. In my opinion, the reference to "income derived from concessions" covers not only an arrangement with a third party but the concession operation itself, if self-maintained.

Further indication that the expression "income derived from concessions" includes "income" from self-operation by the tenant, is found in another phrase of the "gross receipts" clause which provides that "gross receipts" encompasses "all rentals and/or income derived from apartments, stores, offices or rental space contained in said theatres". As thus used "income" refers to self-operation; while receipts from third-party operation is covered by the word "rentals". The two connotations are sharply differentiated.

The fact that the agreements use both words, "receipts" and "income", is a significant indication that the parties intended different meanings to be ascribed to them. The necessary distinction is between a business operation conducted by the tenant carrying with it a deduction for costs and receipts from third parties for which the tenant makes no outlay and receives a net sum, necessitating no deduction for costs.

Moreover, the tenant's conduct of the candy concession may well be considered as an operation of a business in the demised premises.

The proper interpretation, therefore, of "gross receipts" as to the operation of the candy business in the tenants' theatres, and one which reaches a fair and just result to both parties, is a construction measuring the rental obligation of the tenant — where it operates the concession itself — by the true income from the concession and not by total receipts.

Since the record contains no evidence as to the cost of the candy or other expenses of operation of the candy concession, a new trial is necessary so that the income from the operation of the candy concessions can be determined to form the basis of a calculation of the percentage due as additional rental.

Rabin, J. P., M. M. Frank, McNally and Stevens, JJ., concur in decision; Valente, J., dissents and votes to reverse and grant new trial, in dissenting opinion.

Judgment affirmed, with costs to the respondents.